May it please the court, I'm Douglas Leder from the United States Department of Justice representing the United States in this appeal. With me today at council table is Mr. Anthony Coppolino, who is the lead trial attorney on this case. With your Honor's permission, indulgence, I'd like to have three minutes time for rebuttal, if that's possible. I'll try to watch your clock, but you also have in front of you a small clock as well. Thank you, Your Honor. And I have a feeling you just might have a few questions. We might. In this case, District Judge Walker held that the government electronically surveilled two of the plaintiffs illegally under the Foreign Intelligence Surveillance Act, which I'll refer to as the FISA, and accordingly entered judgment against the United States. This judgment can be affirmed only if the court ignores black letter law precedent from this court and the Supreme Court, and in fact, this panel's own earlier decision in this case. So the black letter law compels reversal on one of several independent grounds. The court doesn't even have to reach all of the arguments that we've made in our brief. What I'm going to try to hit on, though, and obviously whatever Your Honors are interested in, but we think the simplest way here is the sovereign immunity argument, which I will address. Just very briefly, Judge Walker said that there was an implied waiver of sovereign immunity. As my brother counsel admits, there is no such thing, and so that's clearly wrong. Who can sue under 1810? I'm sorry. Who can sue under 1810? Aggrieved persons, Your Honor. And who can be sued? The statute provides, and it's right here in our... I have it in front of me. Okay. Maybe more, it's a more practical question. We can read what the statute says. Yes. Who would that be in practical terms? Yes, Your Honor. What kind of person or corporation? What you know is it says a person. Person is defined in 1801. It says any person, doesn't it? Correct. That is right, Your Honor. And then as you also know, I'm sure you have it in front of you as well, 1801m defines person. And so who can be sued is exactly what is described in m. And I don't mean that to be flip. So person means any individual, including any officer or employee of the Federal Government. And notice, though, the key thing is there, it does not say the government. It does not say the United States. Well, the United States is not a party to the suit, is it? The plaintiffs have... The government, the government is not a party to the suit, right? Right. The plaintiffs, however, sued the Federal officials in their official capacity. And as you know from all the cases that involve suits against the government, that means a suit against the government. That's how you go about it. So FISA creates this system... Yes. ...where the government can go to a specialized court and get a warrant and intercept communications based on that warrant, right? Yes. I don't mean to quibble with you, Your Honor. We actually don't call it a warrant. We call it an order, if you don't mind. Fine. But the statute also provides that if any person, any individual, goes around the requirements of FISA, doesn't get a proper order, and simply intercepts a communication, they can be liable under 1810. That's correct. And so that can be... So who's in a hypothetical suit, someone who thinks they've been improperly intercepted and brings a suit, who can they name? The individual who actually tapped the phone, and I understand this is done via computer or something like that, but the individual that actually sets the interception in motion, does that person qualify to be sued? Yes, Your Honor. Even if it... Individual and official capacity? Any individual. If what they're doing is suing the President in his official capacity for a particular program, like here the Terrorist Surveillance Program, then no, they can't be sued. What they can sue is the individual seeking damages against the individual. But that is not in the person's official capacity. That's right. That is correct, Your Honor. So let's just cut to the chase. Okay. In your view, you couldn't sue Director Mueller or the NSA head in their official capacities, correct? That's right. Because any suit... You can sue them because that would be a suit against the United States. And any damages would be, if you're suing somebody in their official capacity, remember, if Director Mueller is sued in his individual capacity, in his official case, right, any judgment wouldn't be against him. It would be against the FBI or the new FBI director, meaning the United States, the government. If instead you sue Director Mueller in his individual capacity, if he retires tomorrow, the suit is against him. It's not against the new FBI director who comes in. So the real question here, then, would before the immunity provisions with respect to telecoms, could you envision a suit against the telecoms under 1810? Certainly, Your Honor. Yes. 1810. And that was... I'm sorry I didn't get to it earlier. I was going to answer your question by saying, and you could sue individual employees or corporations that engage in wrongful conduct.  I'm not asking you to assume that an interception occurred. Right. But is that what happens? Is that where we go from here? No, Your Honor. They can't do that because they, in order to sue, they have to show they're an aggrieved person. And as we said, they cannot do that. They cannot demonstrate that they are a plaintiff, proper plaintiff. Let's just assume that they can. Right. Is that where this case goes? Back to district court for discovery? Well, no. When you say for discovery, they have to have some sort of complaint that alleges individual acts by individuals, by defendants. I thought there was an individual claim against the director of the FBI. There is, Your Honor. And what I couldn't figure out is how in the world that could get dismissed in the ether when there had not even been a determination that there either is or is not qualified immunity. Your Honor, that is easily dismissed because, as you know, the Supreme Court said in the Iqbal case, said you can't just name, you know, federal officials and sue. There must be something in your complaint to link them personally to the illegal conduct. Here, as we point out in our brief, if you look at the complaint, the First Amendment complaint. Well, let me just say, was there actually a motion to dismiss vis-à-vis the director? Yes, Your Honor. And was there any determination on that motion as to qualified immunity, Iqbal, or any other legal basis for dismissing him from the suit? The district court dismissed, did dismiss. Correct. We know that. Did the government even raise qualified immunity in the proceedings below vis-à-vis Director Mueller? No, because we hadn't got to that phase yet. The parties agreed. I think that's precisely the point. That's my question. Why don't we – why don't you get there or they get there? You don't need to get there even because all you need to do is look at the complaint. If I may, all the complaint says about Director Mueller is that he expressed doubts about the validity of the program. It doesn't say that Director Mueller did anything. You can't sue a Federal official for their acts under binding Supreme Court precedent. Iqbal, you can't sue and not link them in any way to the bad conduct. What was the basis for the district court's dismissal of the FBI director? The district court – it's at page 72 of the joint – of the excerpts of record. The district court said, the court sees no reason to allow this issue to be held open for future proceedings. The court concludes that the nature of the wrongdoing by governmental actors alleged and established herein is official rather than individual or personal. So what the court – the district court said – the district court got the bottom line right, but as with so many things here, Judge Walker got the reasoning just totally wrong. The problem here isn't that Director Mueller would have been acting in an official capacity. The problem is there's no allegations against that Director Mueller had anything to do with illegal conduct. As a practical matter, that didn't make any sense to me, what you just read, because it's inverted somehow and it's created. So back to Judge Hawkins' question, if we were to agree with you on sovereign immunity vis-à-vis the big government, the United States, why wouldn't the case go back to district court? Because even if on this complaint there may not be sufficient, you'd be permitted to amend and presumably and determine whether or not there would be a complaint. Well, the district court dismissed without leave to amend. I understand that. Right. But, and again, you shouldn't – you shouldn't allow plaintiffs to play these kinds of games, frankly. You can't sue a Federal official. It's not a game. It's a complicated – no, this has been a very complicated proceeding with a thousand legal questions along the way. And you've just told us that Director Mueller could not be sued in his official capacity because that would be tantamount to suing the government. Correct. But it seems that no one has really dealt with him in his individual capacity because of these – this unusual ruling of the district court. Right. But, again, you can't do this to Federal officials. You can't sue them, not say anything about them in the complaint, not link them in any way to the bad conduct and say, oh, well, if I lose on appeal, fine, we'll just – we'll remand it and then we'll try again to name people in their individual capacity. That's why I use the word game, Your Honor. This is just wrong to do this to a Federal official. So the question is under – the Supreme Court has made this quite clear in Iqbal. We look – there are pleading standards that are there in the law. They're part of the Bivens remedy. And they're – excuse me for interrupting. Is there anything in the case law of the Ninth Circuit or the Supreme Court that resolves this issue of whether, quote, any entity under 1810 includes or doesn't include the government? I guess, Your Honor – Do you want to start with a yes or no? I forget how it was phrased. Do you want me to repeat it? No, I'm just trying to remember which way to say yes or no. You should just say no and keep going. There is no case law to support the proposition that if all the statute says is entity, that means the United States. And the plaintiffs have cited none. There is none because, as you – I think you're well aware, there is a presumption that – well established that the only way you waive sovereign immunity is clearly in the statute. And so if you just say entity or you just say person, that does not include the sovereign. Why did they add this little phrase? It seems that if we didn't have the phrase including any officer or employee of the Federal Government, that we probably – there would be nothing to argue about. But now there's something to argue about because Congress put this little phrase in there. What is the meaning of that phrase? To provide that you can sue Federal officials individually. And I'd like to, if I could, to contrast this. As we've pointed out in our brief, the contrast with 18 U.S.C. 2712 here is very stark. There, Congress did expressly waive the sovereign immunity of the United States and provided for actions, but under three specified circumstances. As plaintiffs agree, not here. And it set up a specialized procedure. It says you have to file a claim as if you were suing under the Federal Tort Claims Act, and there are various requirements and statutes and limitations that deal with it. So Congress expressly did provide for civil suits against the United States, but did not cover this kind of situation. Well, as I recall, there was this flurry after 9-11 in the Patriot Act where originally one of the members of Congress had put in no immunity for the U.S. under 1810, but then that fell out, and then it ended up saying it was okay for the U.S. under 2712. Is that right? I mean, you have 2720 or 2520 and 2712 are two other provisions that permit the United States, except one of those, to actually be sued, right? I'm sorry, Your Honor. I'm drawing a blank on 2720. I apologize. 2712. 2720 is the statute that 18 U.S.C. 2720. Yes. That basically says – I'm sorry. I misspoke. 2520. That's where you can get civil damages if your communications have been intercepted other than the United States. That's 2520. Okay. And then 2712 says you can get – you can sue the United States for FISA violations under these three or so sections. Yes. Three involving – But not involving 1810. Right. Involving specified use, et cetera. So everybody agrees it's not here. And the only reason I'm bringing up 2712 is to show the stark contrast that, again, when Congress and the Court obviously is well aware of this massive precedent of many, many decades, that person doesn't mean the sovereign. And so when Congress wishes it to mean the sovereign, it provides – so provides in the statute. And because – Go ahead and finish. Oh, I'm sure one of the questions is that. I'm just trying to – I'm trying to understand the government's position, overall position. The position of the government is that FISA provides a way for a government to obtain orders to intercept communications. It also provides that if any person, any entity doesn't follow the strictures of FISA, they're subject to liability. But the government's position is you can't sue the government. Right. I'm just trying to get the whole picture. Yes. Yes, Your Honor. Could you sue a government official in his official capacity for injunctive relief? Certainly, Your Honor.    in his official capacity for injunctive relief. Well, I'm not going to say, Judge Hawkins, all I want to say was this case goes away simply under sovereign immunity. You don't have to get to State Secrets except for the suit against Director Mueller. But as I say, that is just – frankly, that's just outrageous, and they shouldn't be allowed to do this. As far as what the State Secrets – right, Your Honor. If we have an unaggrieved plaintiff – and remember, the statute is explicit. It has to be an aggrieved person. It cannot just be that somebody walks into court and says, I think I might have been surveilled, and so – illegally, and so I want to sue and take discovery about that. The D.C. Circuit said in Barr, you can't do that. That's not what Congress passed here. But even for an aggrieved person, correct, Your Honor, if in one of those very rare circumstances – and I know Your Honor and I have been involved in some State Secrets cases together, so Your Honor is well aware – it's extremely rare circumstances when the government says that the case will – at the highest levels, you know, involving Cabinet-level officers, says this case cannot proceed, or at least parts of this case cannot proceed, that raises a special situation. Now – But we said here that the subject matter of it, given the government's desire to defend its program in some of these other cases that we've had, we said that the mere subject of it isn't a State Secret. Right. So you can have a lawsuit over this. We've already said that, right? Yes. And what you said is – and I'm glad Your Honor brought up your prior decision because we think it is very key here. You said that the State Secret – despite that ruling against the government on that point, you said the State Secrets claim here was exceptionally well-documented. And indeed, remember, you gave a very limited remand. The mandate of this Court was, has the State Secrets privilege been displaced by Section 1806 of the FISA? If not, you directed that the case would – is to be dismissed for lack of ability to show Article III standing. The plaintiffs now are trying to argue that actually you were a bit wrong there because, remember here, they're saying even if the particular document, the secret document is taken out of the case, they're saying there's public information that they can rely on to show that the case can proceed. But that's not what – that's not what they argued before this Court last time, and that's not what you held. Well, isn't part of the answer to that is the information wasn't available? That might before – that might be a perfectly good argument. It doesn't apply here because virtually all of the information – the main thing they rely on was available before. The main thing they say they rely on is the statement by then-Deputy FBI Director Pistole. And they say, ha-ha, that's it, that shows. Well, that actually was – that statement was made before you ruled last time, and we've reprinted it in our – I think both our opening and our reply brief. It doesn't say anything about these plaintiffs, about them being surveilled. It doesn't show anything. Well, this kind of mixes and matches. Usually in a case of standing, we've been told to look at whether there's sufficient allegations to establish standing and then to look separately at the statutory coverage, such as who is an aggrieved person. Sometimes they merge, obviously. Yes. But it would seem to me that we wouldn't dismiss the claim on the basis of standing as it presently sits. Do you also agree with that? No, Your Honor, because as you correctly ruled last time, if you don't – these plaintiffs have no idea if they've actually been or not been surveilled, electronically surveilled. They've surmised that they have. They say that a particular document shows they have. You held that that document was properly covered by the State Secrets Privilege. That document is out of the case, unless the State Secrets Privilege has been displaced. Let's assume for a moment it has not been displaced. As you previously ruled, there then can't be any Article III standing because the plaintiffs can never show that they were aggrieved persons because the government won't confirm or deny. So let me get the setup straight. First, you come in with the State Secrets, which basically the government's position is you can't even have a lawsuit. We've, of course, said that doesn't wash under Reynolds and other cases. But then you come in and say, well, in any event, you can't have a lawsuit against the United States. And even though we have this fancy statute under FISA that gives everybody all the powers, you can't sue the United States.    And then you have the same thing with the government. So if you go through all of these remedies, you'll never be able to sue anyone who actually did the surveillance. No. No, no, no. I'm sorry, Your Honor. How would one do that? You can't sue the United States. You can sue the individual. And in this case, you can't sue Director Mueller because your allegations are not specific enough. Not near specific enough. That's right. But if they, as they say, these are separate arguments. I understand you're saying in the whole. The sovereign immunity argument doesn't depend on State Secrets. That, okay. But even if you say, well, I'm going to rule against you on sovereign immunity, that's when this Court's prior decision kicks in and says, the question is, was the State Secrets privilege displaced by Congress in the FISA 1806 act? Let's say we disagreed with you about this limbo status of the Director of the FBI vis-à-vis this lawsuit and that at least should go back to a district court to sort out his status. If that were a decision, would we need to rule now on the FISA and State Secrets? Yes, you would, Your Honor, because if you say, well, you know what, I think Iqbal was wrong to decide. I'm just going to ignore that. And so I'm going to let them sue. We wouldn't need to determine that we disagreed with the Supreme Court in order to remand it, would we? You would have. So, yes, I think you would, because Iqbal says here's what the pleading standards are. And, again, you can't just serially try to drag Federal officials into court this way. But in direct answer to your question, then a remand wouldn't be appropriate if we're right on the State Secrets claim because that goes to the plaintiff's Article III standing right at the outset, so that they couldn't demonstrate As you yourselves said and ruled last time, if they can't demon – if the State Secrets privilege authority has not been displaced, you held these plaintiffs cannot demonstrate Article III standing, and therefore it doesn't matter who the potential defendants are. These plaintiffs can't sue. Maybe somebody else could, but not these plaintiffs. I think we took you over your time.  We'll give you some rebuttal time. Thank you. Good morning. May it please the Court. John B. Eisenberg for Wendell Ballew and Afsim Ghafour. I'd like to start by explaining that we do not view this litigation as a game in the slightest. We have endeavored for six and a half years to find a way to litigate this case without compromising national security. We understand how difficult this case has been for this Court and for Judge Walker. We eventually feel we, along with Judge Walker, found a way to litigate the case safely, and that was under the protective provisions of FISA, specifically 1806F. Ultimately, as the government repeatedly refused to go forward under 1806F, it became increasingly evident that we no longer needed the sealed document in the case at all to prove standing and liability. And so we let go of it. And we proceeded to judgment safely. Let me just ask you about that. It seems that had you stayed in the case with 1806, then the government, as the United States, could have been sued, correct? Certainly. But you've dropped your 1806 claim? Oh, no, no, no, no. We have not dropped it. 1806F is the provision that allows for litigation of issues that involve state secrets, classified information under secure conditions. The liability provision 1810 provides a cause of action for warrantless electronic surveillance. We have not dropped that claim. We are going forward on that claim. We have been all along, from day one until today. Judge Walker ruled in 2009 that because FISA preempts a state secrets privilege and because we had made a showing of aggrieved party status with non-classified evidence, we could go forward to use the sealed document, however we wish, within the confines of 1806F, which provides for security proceedings like in-camera proceedings, redaction, protective orders, and the like. We never got to proceedings under 1806F because the government refused, I can only put it in Mr. Lutter's words, to play the game. They said we're not playing. I just wanted some clarification of that, because when the case was before us before, we did not have the sovereign immunity issue on the table. It's now on the table. Under 18 U.S.C. 2712, there's an explicit grant of plaintiff's ability to commence an action against the United States for money damages, and I believe that 1806 is one of the specific sections you can invoke there. So you can, if there's a willful violation of that, you can file against the United States under 2712. That, in my view, wouldn't pose a sovereign immunity problem. But you're saying that that's not you're under 1810, correct? Correct. Not 1806A. And not 2712. Correct. All right. Correct. 2712 addresses three causes of action under different provisions of FISA, not including 1810. Correct. But the one that harkens back to the sovereign immunity. Right. 2712 is quite clear. You can sue the United States for these three sections of FISA if there's a violation. Yes. And you can sue them for money damages. Yes. And if you win, you get money. Yes. Okay. Then you have 1810, which doesn't say that. 1810 says you can sue a person. Correct. A person is defined in 1801M as, among other things, I'll give you the exact language. 1801M. It includes that phrase, an officer or employee of the entity. Right. A person or an entity. And it says any individual, including an officer or employee of the Federal Government. Do you need to have a violation of 1809 to sue under 1810? You need to have either surveilled someone or used unlawful surveillance-produced information. That's what 1810 says. No, I'm asking you another question. Okay. Do you need a violation of Section 1809 as 1810 is written? I guess as a practical matter, 1810 says it's violated if you do something as defined by 1809. So I would read that to mean. Sounds like the answer is yes. So if you need 1809, then the question is can you be a criminal defendant in your official capacity under 1809? Yes, you can. Can you give me some authority for that? I can't offhand, but I'd be happy to provide some. Do you want to look for some and provide that to the court? I'd be happy if you'd like me to. Would you like me to do that, Your Honor? I would. I shall do that. And the government is also welcome if you have contrary authority to provide that as well. Let me turn to, you know, this kind of, among other things, is a complicated question of statutory interpretation, that class in law school that everybody avoided, but it comes back to be so important. And one of your arguments is that when Congress amended 2712 about immunity and left 1810 alone, that means that broadly defined congressional intent was that any entity included the government. Yes. I've correctly stated your argument? Yes. You have, is there any indication in the congressional record that would substantiate that Congress was aware of 1810 in the big picture when they amended 2712? Only the general presumption that Congress is aware of existing statutes when they amend. Well, wasn't, no, in fact, wasn't there, there's a lot of statutory history here, but my recollection is in doing that amendment, initially they were going to, I think it was Congressman Frank was going to put in language that said that there was no immunity for the United States, correct, under 1810? The court is referring to the FISA Amendment Act now, I presume. Right. 2008. I understand. But I thought originally there was, they weren't going to put in immunity, and they say no immunity for the government under 1810, and then things work their way through, and ultimately that language never ends up in there. And you're left, though, with a very clear no immunity under Section 2712. I believe 2712 was amended in 2001. Correct. As part of the ICPJ Act. As part of the Patriot Act, right. Yes. And what about 272510 or 2520? I gather it was amendment, was it amended by the FISA Amendment Act? I actually don't know. I believe it was, but I thought at that time there was discussion about let's give immunity under 1810, but they didn't do that. We followed those proceedings very carefully because we felt that our case, our litigation, the Al-Haramain case, hung in the balance. Were we going to disappear along with the telecoms in the provision of retroactive immunity? We didn't. For some reason, eventually it was dropped. But it was dropped that there would be no immunity. You see, the telecoms got immunity. The question was there, let's not give any immunity to the U.S., was the discussion, but that fell by the wayside. And indeed, in the legislative history, it's indication that they intended the FISA Amendments Act not to affect existing lawsuits against the government, which I took to mean, among others, us. Let me ask you this. Judge Walker, if I can summarize, ruled that 1810 provides for a waiver of sovereign immunity because otherwise there would be no remedy. Yes. Something like that. And this, we have to sort of line that up against the notion that unless sovereign immunity is unambiguously waived, it's not waived. So do you have any cases that in any area of federal law that say where if you interpret that there's no waiver of sovereign immunity, it means that there's no remedy, that that means that there's a waiver? I haven't stated that very well. Any cases to support the basis upon which Judge Walker ruled that 1810 waives sovereign immunity? Actually, I believe FAA v. Cooper, which is a quite recent case from the U.S. Supreme Court, supports that determination. It just didn't exist when he ruled. In FAA v. Cooper, the Supreme Court, this is just this year, the Supreme Court said, although this canon of interpretation, I'm quoting from 132 Supreme Court at 1448, although this canon of interpretation, and by that the Court means the canon of waiver will not be implied, waiver of sovereign immunity, although it requires an unmistakable expression of congressional intent to waive the government's We have never required that Congress use magic words, ellipsis. What we thus require is that the scope of Congress's waiver be clearly discernible from the statutory text in light of traditional interpretive tools. Now, there is a very pertinent traditional interpretive tool of statutory construction that the government has never responded to, even though we've mentioned it numerous times in our briefs. And that's the rule against the construction that would create surplusage in a statute. The government's It would make the remedy illusory. It would make the reference to any officer or employee of the Federal Government meaningless. The citation to Cooper is in your 28J letter from April. I'm looking at Cooper. I don't believe I gave the Supreme Court's side at the time because it was too new. It was brand new. It was brand new. But I'm looking at Cooper, and it seemed to me that you could actually read it the way, which is that the court signaled there that it wouldn't read sovereign immunity waiver in a privacy area, which is very important. It wouldn't read it broadly. And that's an area, of course, that is overriding federal concerns. So I read Cooper, but I didn't see it as answering your question. And to the extent that there's no remedy available, the fact is that you have these other statutes where the sovereign immunity is specifically waived, which for whatever reason you're not proceeding under, or at least that case wasn't decided under those statutes. So it doesn't seem to me it would necessarily leave you without a remedy. It may leave you without a remedy for money damages against the U.S. on certain sections, but you would potentially have a remedy against various of these individuals if they proceeded without a warrant and in violation, would you not? Mr. Honor, you mean in their individual capacities? Yes. The entire reason we added Director Mueller to the auction was because the government had asserted sovereign immunity. But, you know, Judge Walker was kind of concerned, as he might well be, with just a general feeling of public policy wouldn't be served if he were to invoke the sovereign immunity. But he does that at the same time everybody admitting that there's no actual grant here. So all I'm saying is that there is a remedy, certain remedies against the U.S. and certain remedies against the individuals, correct? Even if there's sovereign immunity under 1810 for the U.S. government. If there's sovereign immunity under 1810, our only remedy in damages is against the director individually, personally. The remedies of injunctive relief and declaratory relief, we were denied. Okay. What about 2712? We did not proceed under 2712. So that's not to say, then, there's not a remedy. It's just that you didn't. That is a remedy. 2712 doesn't address what we sued under. We sued under 1810. Well, I understand that. But. So 2712 is not our cause of action. Our cause of action is warrantless electronic surveillance, which is 1810. Could you turn to the director, then, and address the government's contention that even though Judge Walker's reasoning may be wrong, that his result was right? Because I know you have a cross appeal with respect to the director. Maybe you could shed some light on his individual status for us. I'd be happy to. Judge Walker, as Your Honor observed, dismissed Mueller solely because he determined that all these individuals acted in their official capacities. It's the only reason he dismissed Mueller from the case. He didn't make any finding on qualified immunity. We never litigated it. And it's a factual question that remains to be litigated. Have we alleged enough? I believe we have. If you look at, I believe it's at page 4 of our First Amendment complaint, we asserted a considerable number of allegations of his involvement in the, I can only say, notorious events of 2004, the bedside incident, his expression of serious reservations about the warrantless wiretapping program. That's what he said. I had serious reservations about it. I believe the issue would have to be litigated. This Court is not in a position to The government's response is that those are general allegations, but not about his personal involvement that would cover a violation of 1810. We have alleged that as the director of the FBI, he oversaw the use of TSP-produced information. I mean, responsibility does end at the top, doesn't it? Were you, in the last round before the district court, given an opportunity to amend your complaint vis-à-vis individual liability? In the last round, no. Judge Walker just said, I'm finding they were all acting in their official capacities. It wouldn't be fair, it wouldn't be right, for us to go forward with regard to Miller individually. And at that point, we're okay with that because Miller was just a fail-safe, if I can say that. I will say this. Wait just a second. You said you were okay with that. Well, we felt that we did not wish to proceed against Director Miller individually if the court had found there was a waiver of sovereign immunity because we had no desire to attempt to obtain damages from the director individually. This lawsuit was about official government conduct, not rogue individuals. If we were to hypothetically agree with the government on sovereign immunity on 1810, but there still remained potential individual liability, would it make sense to remand just to determine whether or not there's qualified immunity before launching into the state secret's FISA morass? In other words, if he doesn't have qualified immunity, then of course we would need to address that question. But if he did have qualified immunity, which generally is viewed as not having to kind of go through the suit, that would be the end of the story, at least as to that part of the case, right? Unfortunately, for your honors, the morass of determining FISA preemption cannot be avoided by a finding of sovereign immunity, and here's why. The government's first argument in opposing our cross-appeal is that the plaintiffs may not proceed against Director Miller individually because FISA does not preempt the state secret's privilege, and therefore the privilege kills the case against Miller individually. For this Court to send the case back for further proceedings against Miller, the Court must first determine the issue that the government has raised on the cross-appeal. The Court must first determine does FISA preempt the state secret's privilege. Would you also explain if the only claim, just hypothetically, if the only claim were a claim against Mr. Miller individually, he would not be there as a representative of the U.S. government. Is that correct? That is correct. And if that were true, how does the state secret privilege get invoked? I think in the same way it happened in the telecom cases. The government intervenes. Intervenes. Intervenes and kills the case. But that's a different. So it's back in there. Yes. In terms. And let me ask you, do you think it's possible that there could be an almost a hybrid situation where the state secret's privilege is not totally displaced by FISA, but as a threshold matter could be invoked to determine whether a suit could go forward at all, and if you got past that hump, then FISA would take over in displacing the state secrets from there, or is it an all or nothing game? That's sort of what Judge Walker found, actually. He said in order to get to 1806F, the displacing provisions of FISA, we were first required to establish agreed party status. Agreed party meant subject to electronic surveillance, just electronic surveillance. That's FISA's definition of agreed party, among other things. Judge Walker said, I'm not going to allow you to use the preempting provisions of FISA until you first can prove to me with non-classified evidence that you were aggrieved. And we did it. We filed our amended complaint, and he ruled that we had made a sufficient showing of agreed party status in order to get to the preemptive provisions. So the answer to Your Honor's question is the preemption is quite limited. It doesn't really kick in until you've gotten past that first hump, and that's why this case is so unique. And the government is warned of the floodgates being opened, but I assure you they will not be opened. There will not be another case like this one, regardless of how the court rules. In the question of the preemption of FISA over the state secrets, one of the arguments is that there's not really a parallel between the state secrets as set out in Reynolds and the statutory provisions in FISA. And I'd appreciate hearing your response to that argument. I'm not sure I understand the question. Well, I think it's the government's argument. They're basically saying how could it be preempted when it's not the same thing. I think they're saying as I understand what they're saying is how can it be preempted when it's not mentioned? Well, they've said that, but they've also said the scope of it isn't the same thing. The scope of it isn't the same thing. That's what they've said, as I read their brief. Indeed, it's not. Under the state secrets privilege, it's invoked, the case is over. If it's properly invoked, the case is over, unless you can prove your case of non-classified evidence. Under FISA, if you get past aggrieved party status and can get to 1806F, then the case is not necessarily thrown out. It's litigated under secure conditions, protective orders redacting and the like. So, I mean, of course FISA is different than the state secrets privilege. If it were identical in its protective provisions, it wouldn't be preemptive. It would be duplicative. If I'd like to address one or two more points, actually. Judge Hawkins asked with regard to the entity language in 1801M, whether there's any case law that supports interpreting that as a waiver of sovereign immunity. Mr. Letters said no. There's nothing on point. That's not true. The case law is cited at page 31 of our brief, of our first brief. And the two cases are Adams v. City of Battle Creek, 6th District, 2001, and Organizacion J.D.L.T.D.A., 2nd District, 1994, which interpreted ECPOB provisions that the use of the word entity is including the United States. This is page 31. This is page 31 of our brief. So there is, of our main brief. So what there is, is there's a history of case law. I'm sorry. Okay. This is the Sixth Circuit and Second Circuit cases. Right. Yes. What happened is initially ECPA said entity without excluding the United States. These two cases says that means the United States. Congress subsequently added language to the statute to exclude the United States. So these cases tell us that use of the word entity in and of itself includes the U.S. Government, includes the United States, unless Congress says otherwise. And that's what we have here. That's the case law that supports interpretation of the use of the word entity as waiving sovereign immunity. So it's really waived in two independent respects. Any cases before 2001 that interpret entity to include the government? I did not find any others, Your Honor. There's not a whole lot of case law on this. No. But I will say this. Those involved, I mean, I think one of those at least involved a kind of an unusual back-and-forth between Congress and the courts. That's true. What we didn't have, what we don't, and it very well could happen is that this Court were to issue a ruling saying sovereign immunity is waived by the use of the word entity. In this definition, Congress might very well do what it did in these cases, come back and add, except not the United States. And that would be the analogy. But right now where we are in this case is where these two cases were decided. I'd also like to. You've exceeded your time, so you might want to begin to wrap up. And we've given you an extra five minutes. And I appreciate that. And I will close with this. The notion that this Court's mandate precluded us from going forward on non-classified evidence because everything we used was already in the record. And Mr. Letter focused on what he called the main thing, our biggest piece of evidence. That was Deputy Director Pistole's admission that the government used surveillance in the investigation of Al-Haramain. The main thing. That was our big piece of evidence. According to Mr. Letter, that evidence was already out there when this Court ruled. Well, that's true in and of itself. But it wasn't out there when we argued this case in August of 2007 on the first vote round. It came four months later, two months later in October of 2007. The last time I stood before this Court, Mr. Bondi stood before the Court and said, it is a state secret. We will never tell anybody. The government will never admit or deny conducting surveillance of any sort under the TSP or any other program. Two months later, the Deputy Director of the FBI did just that in a speech. Now, before the ABA and the American Banking Association. Not the American Bar Association. It was the American Bar Association and the American Bankers Association, a joint meeting. In the speech, two months later. ABA squared. I know. Exactly. Well, we have so many acronyms in this case, it can get dizzying. But, yes, he admitted it. He said, we use surveillance. This is two months after Mr. Bondi said, we'll never, ever, ever admit such a thing. Now, I took that to be rather significant. I took it to be the foundation of our case. Not the be-all and end-all of our case, but the beginning of putting together a record of non-classified evidence to prove our case. And I can't tell you when it went onto the net, onto the FBI's website. It might have been on the website by the time this Court ruled. It might not have. I didn't look for this evidence until Judge Walker told me to. Well, let's put it this way. It wasn't part of the appellate record at the time you argued the case. That is correct. Certainly, I didn't anticipate being able to go forward the way we did. I don't think this Court did. I don't think Judge Walker did. As the events unfolded over the course of six and a half years of this litigation, we found a way to litigate it safely without compromising national security. And I think it's been quite an achievement for us and the judiciary. Thank you. Thank you. Mr. Leder, I'll give you three minutes for rebuttal. Thank you, Your Honor. I would just – what I'd like to do is spend virtually all my rebuttal on responding to questions that you asked. My friend, Mr. Eisenberg. By the way, on the First Amendment complaint, the key is page 269 of the excerpts of record. That's the only thing that they say about Director Mueller, which is, as I say, comes nowhere near close to showing that he personally had anything to do with illegal conduct. And that's what's required by Iqbal. Your Honor, you specifically asked about if, you know, does 1810 rely on a criminal violation of 1809. The answer is yes. The language of the statute says that. And you asked, could there be a criminal case against somebody in their official capacity? And the answer is no. By definition, you cannot have that, because if you look, you know, the Federal rules provide in Rule 25, substitution of parties, 25d, when a public officer leaves office, they're out of the case. So you can't criminally prosecute somebody in official capacity, because they'd be out of the case. The criminal law, and obviously you couldn't put their successor in jail or find their successor. You couldn't find the government. The whole point of — I mean, that makes sense to me, but I was interested to know if there's authority and if he has authority on the other side. But because usually you're prosecuted in your individual capacity. And there's no other way you could be. As I say, official capacity, you're out of the case. So — Maybe you can explain this to me, then. Why in Section 1809 do they have that very strange last phrase that says something to the effect that — In the officer. Yeah. That you have Federal jurisdiction if it involves an employee or officer. I'm sorry. In 1809, there's Federal jurisdiction over an offense under the section if the person committing the offense was an officer employee at the time the offense was committed. I thought if you had a U.S. Federal statute that you had U.S. Federal jurisdiction in the criminal arena. What in the heck does that mean? You know what? I do not know the — I don't know the answer because obviously you don't prosecute a Federal — well, normally you don't prosecute a Federal crime in State court. I suppose you could. So maybe that's all it means is you have to prosecute — Well, it made no sense to me in the context of it was one more place where they stuck in this phrase. And I'm trying to see if there's any meaning to it. Right. But again, by definition, you — and the only case I can think of, we've cited in our brief a couple times, is Singleton from the Tenth Circuit in Bank case that says the sovereign doesn't violate a criminal statute. So I was very glad that you had brought up 1809. Then, let's see. Oh. My friend, Mr. Eisenberg, pointed to page 31 of his brief. And for example — no, there's some very clever wording he says in his brief. The circuit courts had construed to mean authorization included governmental entities. The Adams case, by the way, the court said that there was — you could bring suit against a municipal entity, not the United States. And I think Congress — I think it's interesting that Mr. Eisenberg is relying on cases where courts held and Congress felt that the courts had so mistakenly ruled that it had to almost immediately fix it.  Well, the final point, unless you have questions, is on the surveillance point. Yes, Deputy Director Pistol said we use surveillance. Surveillance doesn't necessarily mean electronic surveillance under the FISA. That's a specifically defined statutory term. Surveillance — we conduct surveillance when we watch people. We conduct surveillance when we get another country with whom we have intelligence and sharing. They conduct the surveillance and they give it to us. What did he say exactly? He — in our — it's quoted at length in our brief. If you will give me a moment, I will find the page number, unless my colleague has already done it. As I say, we have a block quote with the whole thing there. I'm sorry. What page is that? I'm sorry. Page 28. Page 28 of our opening brief? Or our reply? Our reply. Oh, reply. Page 28, so the yellow cover brief. And you see we quote all the relevant parts there and he says we follow the money, we uncovered criminal tax and money-laundering violations. And by the way, he's talking about Al-Haramain. Of course there could be surveillance of Al-Haramain, which is not a proper plaintiff. Al-Haramain is, as this Court has held, a terrorist organization. And let's see, then we — two of its leaders are not the plaintiffs here. You don't really surveil an organization unless you stake out — I suppose you could stake out its headquarters, but you surveil people within the organization. Certainly. And then he says at the top of page 29, yes, we used other investigative tools like records checks, surveillance, and interviews of various subjects, but it was the financial evidence that provided justification for the initial designation and then the criminal charges. The designation was not of the plaintiffs. The criminal charges were not of the plaintiffs. All Ms. Deputy Director Pista was saying is we conducted surveillance. He doesn't say of whom. And he doesn't say electronic surveillance. Surveillance, as I say, can be looking at somebody. So he was not coming anywhere close to saying what my friend Mr. Eisenberg is saying, the government admitted officially that we conducted electronic surveillance within the meaning of the vice. So you can't change his words to say that. Thank you. Thank you, Your Honor. Thank both counsel for your arguments, also for the briefing, which is quite extensive, but very, very well done and very helpful. Thank you. The Court is adjourned. All rise. This Court stands adjourned.
judges: Pregerson, Hawkins, McKeown